ACE METAL FABRICATING CO., Plaintiff-Appellee, v. ARVID C. WALBERG & CO., Defendant-Appellant.

Second District   No. 84—316

Opinion filed July 30, 1985.

Thomas A. Stansbury, of Mason, Albright & Stansbury, of Chicago, for appellant.

Ellen S. Kornichuk, of Clarendon Hills, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

This appeal arises from the trial court's order granting the plaintiff's motion for registration of a foreign judgment. On June 27, 1983, the plaintiff filed a petition to register the Ohio judgment pursuant to sections 12—601 through 12—617 of the Illinois Uniform Enforcement of Foreign Judgments Act (Ill. Rev. Stat. 1983, ch. 110, pars. 12—601 through 12—617) (hereinafter cited as Foreign Judgments Act). Following a hearing, the trial judge determined the defendant had transacted business in Ohio and, thus, the Ohio jurisdictional requirements had been met. The trial court then ordered registration of the Ohio judgment from which the defendant now appeals.

The defendant, Arvid C. Walberg & Co., an Illinois corporation, designs and markets electrostatic spray equipment and spray booths. The plaintiff, Ace Metal Fabricating Co., an Ohio corporation, performs metal fabricating work exclusively in Ohio. In early 1981, the defendant contacted the plaintiff and inquired about having sheet metal work performed for its spray booths. Ron Smith, the defendant's commission sales representative in Ohio, introduced the defendant and the plaintiff in Ohio but had no further contact in the negotiations between the two companies. Smith's role as defendant's sales representative involved selling defendant's equipment in Ohio and getting the defendant "into the door" of Ohio companies.

After the defendant's initial inquiry and the mailing of drawings and specifications, the plaintiff sent price quotations to the defendant. The purchase orders were negotiated by telephone. Jack Weigert,

defendant's engineer draftsman, prepared the orders in Illinois and sent them to Ohio, where they were accepted by the plaintiff. The purchase orders required the plaintiff to manufacture component parts for the defendant's spray booths according to defendant's specifications, and to ship the completed components to defendant's customers in various areas of the country. Wahlberg visited the plaintiff in the summer of 1981. The record is not clear whether this was before or after the first purchase order. At no time prior to the execution of the purchase orders did the plaintiff contact the defendant to solicit its business and all components were manufactured exclusively in Ohio. The plaintiff billed the defendant for the work performed in the amounts of $21,222.37 and $20,673.45. Having received payment of only $2,000, the plaintiff filed a lawsuit in the court of common pleas, Cuyahoga County, Ohio, seeking return of the remaining balance of $39,895.82 plus interest.

The defendant was served by certified mail, return receipt requested, pursuant to Ohio Civil Rule 4.3 (Ohio Civ. R. 4.3), the current long-arm provision of the Ohio service of process laws. On March 14, 1983, pursuant to Ohio Civil Rule 55 (Ohio Civ. R. 55), the Ohio court entered a default judgment against the defendant when it failed to appear, plead or defend in the Ohio court.

The plaintiff asserts that sections 12—601 through 12—617 of the foreign Judgments Act are the statutory provisions applicable herein. The defendant relies on sections 12—618 through 12—626 of the Uniform Foreign Money-Judgments Recognition Act (Ill. Rev. Stat. 1983, ch. 110, pars. 12—618 through 12—626) (hereinafter cited as Foreign Money-Judgments Act). Under that section the defendant raises the following issues: (1) whether the Ohio court provided impartial tribunals or procedures compatible with due process requirements so as to render the Ohio judgment conclusive; (2) whether the Ohio court had personal jurisdiction over the defendant to render the Ohio judgment conclusive; (3) whether the Ohio judgment was obtained by fraud to render it invalid; (4) whether the cause of action upon which the Ohio judgment was granted was repugnant to Illinois public policy so as to render the judgment invalid; (5) whether the Ohio court was a seriously inconvenient forum to preclude recognition of the Ohio judgment in the Illinois court; (6) whether the defendant transacted business in Ohio where it made sales calls and effected sales of its products in Ohio; and (7) whether the cause of action upon which the Ohio judgment is founded must arise from the defendant's transaction of business in Ohio so as to subject the defendant to the Ohio long-arm statute.

Section 12—601(a) of the Foreign Judgments Act defines "foreign judgment" as "any judgment, decree, or order of a court of the United States or of any State or territory, which is entitled to full faith and credit in this state." (Ill. Rev. Stat. 1983, ch. 110, par. 12—601(a).) Article IV, section 1, of the Federal Constitution requires that "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State." (U.S. Const., art. IV, sec. 1.) The intended purpose of this clause is "to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin." *Milwaukee County v. M.E. White Co.* (1935), 296 U.S. 268, 277, 80 L. Ed. 220, 228, 56 S. Ct. 229, 234; *Wisconsin v. Ubrig* (1984), 128 Ill. App. 3d 743, 745.

■ The purpose of the Foreign Judgments Act is to implement the full faith and credit clause of the Federal Constitution and to facilitate interstate enforcement of judgments in any jurisdiction where the judgment debtor is found. (*Light v. Light* (1957), 12 Ill. 2d 502, 505; *Ayers Asphalt Paving, Inc. v. Allen Rose Cement & Construction Co.* (1982), 109 Ill. App. 3d 520, 522; *Thompson v. Safeway Enterprises, Inc.* (1978), 67 Ill. App. 3d 914, 916.) This act was adopted in Illinois to facilitate the enforcement of judgments across State lines. *Light v. Light* (1957), 12 Ill. 2d 502, 505; *Brownlee v. Western Chain Co.* (1977), 49 Ill. App. 3d 247, 250, *cert. denied* (1978), 435 U.S. 968, 56 L. Ed. 2d 59, 98 S. Ct. 1605.

Sections 12—618(a) and (b) of the Foreign Money-Judgments Act define "foreign State" as "any governmental unit other than the United States, or any State, district, commonwealth, territory, ***" and defines "foreign judgment" as "any judgment of a foreign state ***." (Ill. Rev. Stat. 1983, ch. 110, pars. 12—618(a), (b).) Section 12—621 sets forth specific grounds which, when applicable, justify a court's nonrecognition of a foreign money judgment. Ill. Rev. Stat. 1983, ch. 110, par. 12—621.

The defendant, citing no cases but relying on the provisions of the Foreign Money-Judgment Act, argues (1) that the judgment was rendered under a system which does not permit impartial tribunals or procedures compatible with the requirements of due process of law (Ill. Rev. Stat. 1983, ch. 110, par. 12—621(a)(1)); (2) that the Ohio judgment is not conclusive in Illinois because the foreign court did not have personal jurisdiction over the defendant (Ill. Rev. Stat. 1983, ch.

110, par. 12—621(a)(2)); (3) that there was fraud (Ill. Rev. Stat. 1983, ch. 110, par. 12—621(b)(2)); (4) that the cause of action upon which the judgment is based is repugnant to the public policy of this State (Ill. Rev. Stat. 1983, ch. 110, par. 12—621(b)(3)); and (5) that Ohio was a seriously inconvenient forum. Ill. Rev. Stat. 1983, ch. 110, par. 12—621(b)(6).

The Foreign Money-Judgments Act governs enforcement of a foreign country's judgment or decree in the United States. (See *Zalduendo v. Zalduendo* (1977), 45 Ill. App. 3d 849, 854, quoting *Hager v. Hager* (1971), 1 Ill. App. 3d 1047, 1052 (which stated that "a judgment of a foreign country cannot be registered under the Uniform Enforcement of foreign Judgments Act"); *cf. Nardi v. Segal* (1967), 90 Ill. App. 2d 432, 437 (stating that "[t]he enforcement of a foreign country's judgment or decree is governed by the Uniform Foreign Money-Judgments Recognition Act").) This Act expressly applies only to judgments of "foreign" States, which were defined so as to exclude sister States. *Kronitz v. Fifth Ave. Dance Studio, Inc.* (1978), 242 Ga. 398, 249 S.E.2d 80; *Mueller v. Payn* (1976), 30 Md. App. 377, 352 A.2d 895; *Willhite v. Willhite* (Okla. 1976), 546 P.2d 612, 614; Annot., 100 A.L.R.3d 792, 797-98 (1980).

■ The defendant's contentions are not appropriate attacks on a judgment that is entitled to full faith and credit which becomes *res judicata* as to the nature and amount of the plaintiff's claim. (*Ayers Asphalt Paving, Inc. v. Allen Rose Cement & Construction Co.* (1982), 109 Ill. App. 3d 520, 522-23; *Southern Bell Telephone & Telegraph Co. v. Woodstock, Inc.* (1975), 34 Ill. App. 3d 86, 89.) The provisions of the Foreign Money-Judgments Act relate to judgments of foreign countries and were designed to guarantee certain basic rights to residents of Illinois. The judgment of a sister State is not subject to collateral attack in the Illinois court except for the defenses of fraud in the procurement of the judgment or lack of jurisdiction. (*Thompson v. Safeway Enterprises, Inc.* (1978), 67 Ill. App. 3d 914, 916; *Carlson v. Prestige Casualty Co.* (1975), 28 Ill. App. 3d 926, 931; *Davis v. Nehf* (1973), 14 Ill. App. 3d 318, 321-22.) We hold that the Act which covers the registration of this judgment is the Foreign Judgments Act.

The defendant has failed to allege any facts that there was fraud in the procurement of the Ohio judgment but alleges that the Ohio court lacked jurisdiction because it was not transacting business within the meaning of the Ohio long-arm statute under *International Shoe Co. v. State of Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158. The plaintiff argues the Ohio judgment is valid because the defendant failed to rebut the presumption of its va-

lidity. The plaintiff also contends that pursuant to section 2307.382 (Ohio Rev. Code Ann. sec. 2307.382 (Page 1981)) of the Ohio long-arm statute, the defendant is subject to personal jurisdiction within the State of Ohio because the cause of action arises from the defendant's transaction of business in Ohio.

When a foreign judgment is sought to be registered in Illinois the question of jurisdiction may be considered by the trial court; the foreign judgment is presumed valid and it is the defendant's duty to rebut this presumption. (*Watts v. Barrett Industries Corp.* (1978), 59 Ill. App. 3d 1009, 1011.) When asked to register a foreign judgment pursuant to the Foreign Judgments Act, the forum court may inquire into the proceedings of a sister State to determine whether such court had jurisdiction of the subject matter and of the parties. (*Grant, Schon, Wise & Grant v. R.W. Borrowdale Co.* (1983), 114 Ill. App. 3d 89, 92; *Evans v. Advance Schools, Inc.* (1979), 70 Ill. App. 3d 947, 950; *Davis v. Nehf* (1973), 14 Ill. App. 3d 318, 321.) If this inquiry reveals an error which would either render the foreign judgment void according to the law of the foreign State, or deprive the foreign court of jurisdiction over the contesting party according to the general constitutional principals of due process, the foreign judgment has no constitutional claim to full faith and credit. *Grant, Schon, Wise & Grant v. R.W. Borrowdale Co.* (1983), 114 Ill. App. 3d 89, 92; *Evans v. Advance Schools, Inc.* (1979), 70 Ill. App. 3d 947, 950, citing *Kolman v. National Racing Affiliates, Inc.* (1965), 64 Ill. App. 2d 61, 64.

However, when a judgment has been rendered by a court of general jurisdiction of a sister State, there is a strong legal presumption that the court had jurisdiction to render the judgment and that its proceedings conformed to the law of the State in which it was rendered. (*Evans v. Advance Schools, Inc.* (1979), 70 Ill. App. 3d 947, 950-51; *Nelson v. Sutton* (1924), 232 Ill. App. 93, 100.) In *Evans*, the court held that this presumption applied where the defendant, in denying the jurisdiction of the court, failed by certain and positive averments to negate every fact from which the jurisdiction of the court could arise. (*Evans v. Advance Schools, Inc.* (1979), 70 Ill. App. 3d 947, 951.) Thus, the court held the presumption of personal jurisdiction over the defendant prevailed. 70 Ill. App. 3d 947, 951.

The question as to what constitutes "doing business" within a State for jurisdictional purposes is governed by the rule enunciated in *International Shoe Co. v. State of Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158. That court held that "due process requires only that in order to subject a defendant to a judg-

ment in personam, if he be not present within the territory of the forum, he have certain minimal contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Here, the trial court held a hearing and found the facts against the defendant. An appellate court takes a deferential approach to findings of fact made at the trial level (*Havens v. Miller* (1981), 102 Ill. App. 3d 558, 567) and will not substitute its judgment unless the findings are against the manifest weight of the evidence. *MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 235.

The record reveals that the defendant, by its commission agent, Ron Smith, contacted the plaintiff and subsequently contracted with the plaintiff to manufacture goods exclusively in Ohio according to the defendant's drawings and specifications. Further, the plaintiff did not instigate contact with the defendant and never left Ohio to meet the defendant in Illinois during the course of negotiations. The trial court was warranted in finding the defendant had "minimum contacts" with Ohio. The judgment of the trial court registering the Ohio judgment is affirmed.

Affirmed.

NASH, P.J., and SCHNAKE, J., concur.